IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONAS A. THOMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-cv-1361 |
| | § | |
| CEMEX[1] | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMAND |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**INTRODUCTION**

1. Plaintiff Jonas A. Thompson ("Thompson") files this lawsuit against his previous employer, Defendant CEMEX[1], ("CEMEX") alleging discrimination and retaliation based on violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000 et seq).

2. As alleged with greater specificity in paragraphs eight through twenty-nine of this Complaint, Plaintiff complains that he was formerly employed by Defendant as an electrician. Defendant placed Plaintiff under a manager who would routinely make racially derogatory remarks to and about Plaintiff. Further, Defendant allowed such conduct to continue to include actions based on race and retaliation which affected the terms and conditions of employment. Although complaint was made regarding such manager, Defendant allowed the wrongful treatment against Plaintiff to continue and, in fact, worsen. Defendant further retaliated by seeking pretextual reasons for disciplining Plaintiff and requiring Plaintiff to undergo repeated

---

[1] Plaintiff believed his employer, based on employment material and insignia, to be CEMEX in New Braunfels..

drug tests.  Such mistreatment culminated with Defendant terminating Plaintiff's employment for a reason that was pretextual and not uniformly applied to other employees who were not black/African American and who had not filed a discrimination/retaliation complaint.   Through this suit, Plaintiff seeks relief for violations of his rights under the law.

## JURISDICTION AND VENUE

3. This is a civil action brought pursuant 42 U.S.C. § 2000 et seq ("Title VII"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper in the Western District of Texas under 28 U.S.C. § 1402(b) because the events giving rise to these claims occurred in this judicial district.

5. All required conditions precedent required under Title VII (42 U.S.C. § 2000e et. seq.) have been exhausted and/or performed by Plaintiff prior to the filing of this complaint:  Plaintiff filed a charge of retaliation within three hundred days of the date of wrongful adverse action and Plaintiff files this action within ninety days of receiving a Notice of Right to Sue by the EEOC.

## PARTIES

6. Plaintiff JONAS A. THOMPSON is a natural person and a resident of Comal County, Texas, and who was employed by Defendant.

7. Defendant CEMEX is a business entity organized under the laws of Texas located in New Braunfels, Texas and, upon information and belief, a subsidiary and/or connected entity with Cemex, S.A.B. de C.V. and/or Cemex, Inc.  Defendant may be served through its registered agent, Corporate Creations Network, Inc at 5444 Westheimer #1000, Houston, Texas 77056.

## STATEMENT OF FACTS

8. Mr. Jonas A. Thompson, Plaintiff, was a former employee of Defendant Cemex.

9. Mr. Thompson began his employment with Cemex as an electrician on or about May 2018, at its quarry in New Braunfels, Texas.

10. Mr. Thompson was initially hired to work on the day shift, but, approximately two months into his employment, he was moved to night shift. During this time, Mr. Thompson was the only African-American on the night shift.

11. In the night shift, the supervisor assigned to Mr. Thompson by Cemex was "Mando" (possibly Armando Benavides).

12. Defendant Cemex's supervisor would routinely make negative and derogatory statements against Mr. Thompson on the basis of race and color.

13. As one example, the Cemex supervisor would say, on more than one occasion, that he could not see Mr. Thompson and that Mr. Thompson should wear a "strobe light" on his head so the manager can "see him better."

14. The Cemex supervisor would also call Mr. Thompson over the radio and refer to him as "Midnight".

15. The Cemex supervisor saw that such statements and actions would bother Mr. Thompson. However, the supervisor stated that other people have tried to call him out for racist things, but he is still at Cemex and those other people are gone.

16. Approximately four months into Mr. Thompson's employment, "Mando", the Cemex supervisor, commented to Mr. Thompson as to why he gave an assignment to a non-black employee rather than Mr. Thompson. The Cemex supervisor gave his reason by looking directly at Mr. Thompson and stating "because you are a nigger."

17. Sometime later that same night, the Cemex supervisor sent another employee to summon Mr. Thompson. The Cemex supervisor stated to Mr. Thompson that he did not know that his

statements were racist and did not mean to offend Mr. Thompson. Though still shocked and offended, Mr. Thompson knew that he needed his employment and did not make a further issue of it.

18. However, after such incident, the Cemex supervisor froze Mr. Thompson out of assignments and refused to interact with him. These actions by the Cemex supervisor made it difficult for Mr. Thompson to do his work.

19. Upon information and belief, approximately two weeks later, another Cemex employee who was present when the racist statement was made himself reported the incident, and the freezing out of Mr. Thompson, to Defendant's human resources.

20. Cemex's human resources called Mr. Thompson in and questioned him regarding the incident. Mr. Thompson factually responded, and he was asked by human resources what he wanted. Mr. Thompson responded by stating that he wanted the harassment to end, and he informed Cemex about the continuing freezing out by his supervisor. The position of Cemex was that the freezing out was beneficial because it limited contact with the supervisor. Again, the freezing out of Mr. Thompson by his immediate supervisor made the job difficult and placed Mr. Thompson's job in jeopardy.

21. For a period of time, Mr. Thompson was the only electrician on the night shift.

22. Despite this and during this time, the Cemex supervisor "Mando" refused to speak to Mr. Thompson. Mr. Thompson's tasks would be relayed by the supervisor to the radio operator, and the radio operator would inform Mr. Thompson.

23. Another incident occurred when a coworker (named "Joerdi") threw rocks at Mr. Thompson and, when questioned why, said "I didn't see you nigger."

24. Mr. Thompson reported this incident to his supervisor "Mando" and human resources.

25. It appeared that Cemex was investigating a way to terminate Mr. Thompson. On one occasion, "Mando", the Cemex supervisor, was monitoring Mr. Thompson's work on a conveyor belt via video camera. The Cemex supervisor claimed that Mr. Thompson committed a safety infraction. No such violation was committed. The Cemex supervisor attempted to report the infraction but apparently no infraction was discovered, and no report was made.

26. On or about October 17, 2019, Mr. Thompson was on his way to work when he was involved in a motor vehicle accident. The accident was not on the worksite and did not involve a company vehicle. However, apparently a fence belonging to Cemex was damaged. Mr. Thompson provided his insurance information to Cemex.

27. When Mr. Thompson next reported to work, he was required to submit to a drug test. The following day, Cemex required Mr. Thompson to have a physical with a company doctor and required him to take another drug test. During his employment with Cemex, Mr. Thompson was required to take four drug tests which all resulted in negative results.

28. Several days later, Cemex informed Mr. Thompson that he was getting fired for "safety reasons" and that it was due to the car accident. This reason was false and pretextual in that there were no work violations committed, Cemex was already seeking Mr. Thompson's termination due to discrimination and retaliation, and Mr. Thompson was treated differently than those who were not black/African American and had made complaints due to discrimination.

**29.** As a result of Defendant's wrongful actions, Mr. Thompson has suffered loss of wages and benefits, mental anguish and suffering, and attorneys' fees in bringing this matter.

## CAUSES OF ACTION

Discrimination, Retaliation and Harassment

30. Plaintiff re-alleges and incorporates by reference paragraphs eight through twenty-nine above.

31. Title VII, 42 U.S.C.A § 2000e-2 prohibits employers from discriminating against an employee with respect to such employee's compensation, terms, conditions, or privileges of employment, because of such employee's race, color, religion, sex, or national origin.

32. Title VII, 42 U.S.C.A. § 2000e-3, prohibits employers covered thereby from taking reprisal against an employee for complaining about practices which such employee reasonably and in good faith believes are discriminatory.

33. Defendant discriminated against Plaintiff on the basis of Plaintiff's race and color by allowing and sanctioning derogatory and racist comments and actions and set out herein.

34. During Plaintiff's employment with Defendant, Plaintiff made good faith complaints to Defendant regarding such wrongful actions.

35. Defendant's retaliation against Plaintiff as set out herein, culminating with the termination of Plaintiff's employment, constitutes an unlawful reprisal in violation of Title VII, 42 U.S.C.A. § 2000e3.

36. The actions by Defendant against Plaintiff as alleged herein were wrongful, willful, and malicious.

37. Because of the actions of Defendant, Plaintiff suffered material financial injury, emotional and mental distress, and damages all within the jurisdictional limits of this court.

## Damages

38. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and damages.

39. Plaintiff seeks compensatory damages for future pecuniary loses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loses.

40. Plaintiff seeks additional equitable relief as may be appropriate such as reinstatement, promotion, back pay, front pay, and court costs.

41. Plaintiff seeks reasonable attorney's fees and costs including reasonable expert fees.

42. Plaintiff seeks pre and post judgment interest at the maximum rate allowable by law.

43. Plaintiff seeks punitive damages to the extent Defendant acted with malice or reckless indifference.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff may be justly entitled.

 /s/ Juan M. Gonzalez
**Juan M. Gonzalez**
Texas Bar No. 24002158
**LAW OFFICE OF JUAN M. GONZALEZ**
403 W Cypress
San Antonio, Texas  78212
(210) 587-4002 Telephone
(210) 202-5127 Fax
juangmgo@gmail.com
**ATTORNEY FOR PLAINTIFF**